UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THOMAS WOOD & SHARON WOOD | CIVIL ACTION |
| VERSUS | NO: 11-397 |
| AMERICAN CRESCENT ELEVATOR CORPORATION, JACOBS ENGINEERING GROUP INC., AND JACOBS TECHNOLOGY INC. | SECTION: "A" (5) |

## ORDER AND REASONS

Before the Court is a **Motion to Remand (Rec. Doc. 9)** filed by Plaintiffs, Thomas Wood and Sharon Wood ("Plaintiffs"). Defendants, Jacobs Engineering Group Inc., Jacobs Technology Inc. (collectively "Jacobs"), and American Crescent Elevator Corporation ("American Cresent"), oppose the motion. The motion, set for hearing on April 13, 2011, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is **GRANTED**.

## I. BACKGROUND

This case concerns an injury on an elevator shaft at the NASA Michoud Assembly Facility ("Michoud Facility") in New Orleans East. On January 14, 2010, Plaintiff Thomas Wood, an employee of Total Technical Services, Inc., was retained to repair an elevator at the Michoud Facility. (Pls.' Mem. Supp. Mot. to Remand 1.) While trying to take pictures of the elevator, Mr. Wood fell into the elevator pit and sustained injuries. (*Id.* at 2.) Mr. Wood alleges that American Crescent also was on site attempting to repair the elevator and had raised the elevator car beyond the floor where Mr. Wood was working without warning. (*Id.* at 1-2.) According to Plaintiffs, Jacobs was responsible for maintaining the Michoud Facility. (*Id.* at 2.) On December 14, 2010, Plaintiffs

1

filed suit against Jacobs and American Crescent in state court for failure to maintain a safe elevator and failure to warn Mr. Wood of the elevator's dangerous condition. (*Id.*) On February 16, 2011, Jacobs, with the consent of American Crescent, removed the case to federal court pursuant to federal enclave jurisdiction under 28 U.S.C. § 1331. (*Id.*)

Plaintiffs filed the instant motion to remand, arguing that the Court lacks federal enclave jurisdiction because the Michoud Facility is not a federal enclave. (*Id.* at 5.) Plaintiff contends that the Michoud Facility is not a federal enclave because it is not a military base and is managed by Jacobs, a private, for profit, corporate entity. (*Id.*) Even if the Court finds that the Michoud Facility is a federal enclave, Plaintiffs state that the case should be remanded back to state court because state courts have concurrent jurisdiction over federal enclaves. (*Id.* at 5-6.) Defendants oppose the motion, arguing that removal is appropriate because the Michoud Facility qualifies as a federal enclave given that the federal government condemned the property where the Michoud Facility is located, and the Louisiana state legislature consented to the federal government's exclusive jurisdiction over the property. (Jacobs' Mem Opp'n to Mot. to Remand 4; American Crescent's Mem Opp'n to Mot. to Remand 2.) Defendants also assert that the exercise of federal jurisdiction is not affected by concurrent jurisdiction in state courts. (Jacobs' Mem Opp'n to Mot. to Remand 5; American Crescent's Mem Opp'n to Mot. to Remand 2-3.)

On April 14, 2011, the Court reviewed the parties memoranda on the motion to remand and found that it was unclear whether the United States had accepted federal jurisdiction over the Michoud Facility pursuant to 40 U.S.C. § 3112(b). (Rec. Doc. 18.) As a result, the Court ordered Defendants to submit additional evidence demonstrating that the United States had accepted federal jurisdiction over the Michoud Facility. (*Id.*) In response to the Court's order, Defendants submitted

2

additional briefing to the Court purporting to demonstrate that the federal government had accepted jurisdiction over the Michoud Facility pursuant to 40 U.S.C. § 3112(b) in a manner prescribed by Louisiana law. In light of the additional briefing, the Court now rules on the instant motion.

## II. **DISCUSSION**

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove an action from state court to federal court if the federal court can exercise subject matter jurisdiction over the action. 28 U.S.C. § 1441(a) (2006). It is well-established that the party invoking the jurisdiction of a federal court has the burden of proving that the exercise of such jurisdiction is proper. *In re North American Philips Corp.*, No. 91-3106, 1991 WL 40259, at *2 (5th Cir. 1991). "Under the well pleaded complaint rule . . . a movant may not remove a case to federal court unless the plaintiff's complaint establishes that the cause of action arises under federal law." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997). Any doubt regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction and in favor of remand. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988)).

In the instant case, the parties dispute whether the Michoud Facility qualifies as a federal enclave. "Federal enclave jurisdiction is a subspecies of federal question jurisdiction, which is a form of subject matter jurisdiction vested in federal district courts by 28 U.S.C. § 1331." *Lawler v. Miratek Corp.*, No. 09-252, 2010 WL 743925, at *2 (W.D. Tex. Mar. 2, 2010). Federal enclave jurisdiction derives from article I, section 8, clause 17 of the United States Constitution, whereby Congress is vested with the power "[t]o exercise exclusive legislation in all Cases whatsoever . . . by Cession of particular States, and the Acceptance of Congress . . . and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be,

for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful buildings." U.S. Const. art. I, § 8, cl. 17. Such places have been identified as federal enclaves within the exclusive jurisdiction of the United States. *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998). Because Congress has been granted exclusive legislative power over federal enclaves, federal courts have subject matter jurisdiction over actions that arise on federal enclaves. *Matter v. Holley*, 200 F.2d 123, 124-25 (5th Cir. 1953) ("It would be incongruous to hold that although the United States has exclusive sovereignty in the area here involved, its courts are without power to adjudicate controversies arising there."). In *Matter v. Holley*, the Fifth Circuit specifically found that federal subject matter jurisdiction existed over personal injury actions occurring on federal enclaves. *Id.*

In order for federal enclave jurisdiction to exist, (1) the United States must purchase land from a state for the purpose of erecting forts, magazines, arsenals, dock-yards, or other needful buildings, (2) the state legislature must consent to the jurisdiction of the federal government, *Paul v. United States*, 371 U.S. 245, 264 (1963), and (3) if the property was acquired after 1940, the federal government must accept jurisdiction "by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated." 40 U.S.C. § 3112(b) (2006); *see also Paul*, 371 U.S. at 264-65 (noting that since 1940 Congress has required the United States to assent to the transfer of jurisdiction over property); *Dekalb Cnty., Georgia v. Henry C. Beck Co.*, 382 F.2d 992, 994-95 (5th Cir. 1967) (holding that the United States must take some affirmative action pursuant to state law to accept jurisdiction over federal enclaves). The Court now will examine whether Defendants have satisfied the three prong test for federal enclave jurisdiction.

### *A. United States Purchase of the Michoud Facility*

Under the first prong of the federal enclave jurisdiction test, Defendants must show that the United States purchased the Michoud Facility from the State of Louisiana for one of the designated purposes listed in the Federal Enclave Clause. 42 U.S.C. § 3112(b); *Paul*, 371 U.S. at 264. The phrase "other needful buildings" listed in the Federal Enclave Clause has been construed by the Supreme Court to include "whatever structures are found to be necessary in the performance of the federal government." *James v. Dravo Contracting Co.*, 302 U.S. 134, 143 (1937). In addition, several courts specifically have found that NASA facilities qualify as "other needful buildings." In *J & L Management Corp. v. New Era Builders, Inc.*, the court examined whether the NASA Glenn Research Center qualified as a federal enclave. *J & L Mgmt. Corp. v. New Era Builders, Inc.*, No. 09-531, 2009 WL 1707886, at *1 (N.D. Ohio June 17, 2009). The court determined that the NASA Glenn Research Center was a federal enclave pursuant to the "other needful buildings" provision of the Federal Enclave Clause. *Id.* at *4. Also, in *Powell v. Tessada & Associates, Inc.*, the plaintiffs filed suit against their employer alleging employment discrimination. *Powell v. Tessada & Assocs. Inc.*, No. 04-5254, 2005 WL 578103, at *1 (N.D. Cal. Mar. 10, 2005). The defendant employer had contracted to provide janitorial services at the NASA Ames Research Center at Moffett Federal Airfield. *Id.* The plaintiffs disputed that Moffett Field was a federal enclave because it no longer served as a military base and was taken over by NASA Ames. *Id.* The court rejected the plaintiffs' argument because the United States owned the NASA facility and operated it as an airfield. *Id.* at *2.

The Court finds that Defendants have satisfied the first prong of the federal enclave jurisdiction test because the United States acquired the land where the Michoud Facility is located

by condemnation. *See United States v. Michoud Indus. Facilities*, 322 F.2d 698, 703 (5th Cir. 1963). Initially, the United States acquired the land in 1942 on behalf of the Defense Plant Corporation for construction of a shipyard. *Id.* at 699. In November of 1947, the land was sold to a Louisiana state agency, the Board of Commissioners of the Port of New Orleans. *Id.* Between 1951 and 1952, the federal government acquired the land through condemnation. *Id.* at 703. Subsequently, in the early 1960s, the property was transferred by the federal government to NASA, which has retained ownership ever since. (*See* Jacobs' Mem. Opp'n to Mot. to Remand Ex. 1-2.) Because the federal government purchased the Michoud Facility from the State of Louisiana and NASA has retained ownership of the facility since 1962, Defendants have demonstrated federal ownership over the Michoud Facility. Moreover, the Federal Enclave Clause does not require that the NASA facility operate as a military base as Plaintiff argues. Rather, in accord with *James*, *J & L Management Corp.* and *Powell*, the Michoud Facility qualifies as an "other needful building" pursuant to the Federal Enclave Clause because it is a NASA facility owned by the federal government and is necessary to the federal government's maintenance of a national space program.

Notwithstanding the federal government's purchase of the Michoud Facility, Plaintiff argues that federal enclave jurisdiction is lacking because defendants are private companies. Nevertheless, "[f]ederal enclave jurisdiction does not require that any party to the suit be a federal employee, officer, or affiliate, or that substantive federal laws be at issue in the case." *Carmargo v. Gino Morean Enters., L.L.C.*, No. 10-242, 2010 WL 3516186, at *2 (W.D. Tex. Sept. 2, 2010). In *Carmargo v. Gino Morean Enters., L.L.C.*, the plaintiff filed an employment discrimination claim against her employer, a private California business entity that had operated a barbershop and beauty salon on Fort Bliss, an undisputed federal enclave. *Id.* at *1. The court found that the defendant's

status as a private company did not bar application of federal enclave jurisdiction if it could be demonstrated that the claim arose at Fort Bliss. *Id.* at *1-2. Similarly, in *Akin v. Big Three Industries, Inc.*, the plaintiffs' suit against the private manufacturer of a jet engine did not prevent the court from finding federal enclave jurisdiction when the plaintiffs' injuries were sustained on a federal enclave. *Akin v. Big Three Indus. Inc.*, 851 F. Supp. 819, 822 (E.D. Tex. 1994). As in *Carmargo* and *Akin*, Jacobs' status as a private company does not prevent a finding of federal enclave jurisdiction assuming that Defendants can meet the remaining prongs of the federal enclave jurisdiction test.

### *B. Louisiana Legislature's Consent to Federal Jurisdiction*

In order to satisfy the second prong of the federal enclave jurisdiction test, Defendants must show that the Louisiana legislature consented to the jurisdiction of the federal government. 42 U.S.C. § 3112(b); *Paul*, 371 U.S. at 264. A state may consent to federal jurisdiction by enacting legislation that cedes jurisdiction to the United States. *See Dekalb Cnty, Georgia*, 382 F.2d at 994-95; *Fort Leavenworth R. Co. v. Lowe*, 114 U.S. 525, 541-42 (1885). It is evident that the State of Louisiana has consented to the jurisdiction of the United States by enacting section 52.1(A) of the Louisiana Revised Statutes. *See* La. Rev. Stat. § 52:1(A). Section 52.1 provides in pertinent part:

> The United States in accordance with the seventeenth clause, eighth section of the first article of the Constitution of the United States, may acquire and occupy any land in Louisiana required for the purposes of the federal government. The United States shall have exclusive jurisdiction over the property during the time that the United States is the owner or lessee of the property.

La. Rev. Stat. § 52:1(A). Because section 52.1(A) explicitly cedes jurisdiction from the State of Louisiana to the United States for land acquired by the United States in Louisiana, it is clear that the State of Louisiana has consented to the jurisdiction of the federal government over the Michoud

Facility, which was acquired by the United States from the State of Louisiana through condemnation. Thus, the second prong of the federal enclave jurisdiction test has been met.

### *C. Federal Government's Acceptance of Federal Jurisdiction Over the Michoud Facility*

The third prong of the federal enclave jurisdiction test requires that the federal government accept jurisdiction if the property was acquired after 1940. 40 U.S.C. § 3112(b); *see also Paul*, 371 U.S. at 264-65; *Dekalb Cnty., Georgia*, 382 F.2d at 994-95. "The United States [cannot] be forced to accept unwanted legislative jurisdiction." *United States v. Johnson*, 994 F.2d 980, 984-85 (2d. Cir. 1993). The federal government may accept jurisdiction "by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated." 40 U.S.C. § 3112(b). Moreover, "[i]t is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction over land as provided [by § 3112(b)]." 40 U.S.C. § 3112©. If the federal government fails to accept jurisdiction, the state retains jurisdiction. *James*, 302 U.S. at 148.

Defendants concede that the Michoud Facility was acquired after 1940 and that the federal government has not filed a notice of acceptance of jurisdiction with the Governor of Louisiana. Nevertheless, Defendants contend that the federal government has accepted jurisdiction in a manner prescribed by Louisiana law. Specifically, Defendants argue that the United States complied with the Louisiana law because it took affirmative action in transferring the property to NASA and in initiating expropriation proceedings against the Board of Commissioners of the Port of New Orleans, resulting in a judgment vesting exclusive jurisdiction to the United States over the Michoud Facility. Defendants argue that these actions coupled with the grant of jurisdiction from the State of Louisiana pursuant to section 52.1(A) are sufficient to accept federal jurisdiction.

Because Defendants assert that federal jurisdiction was accepted pursuant to section 52.1(A), the Court's analysis will focus on the second method of acceptance and how state laws may provide for the acceptance of federal jurisdiction under § 3112(b). In particular, several courts have examined whether section 52.1(A) provides a means for the acceptance of federal jurisdiction. In *Adams v. United States*, the Supreme Court was presented with the issue of whether the federal government had federal criminal jurisdiction over a military camp in Louisiana where a crime had been committed. *Adams v. United States*, 319 U.S. 312, 313 (1943). In construing a prior version of section 52.1(A), the Court found that the statute authorized the federal government to take jurisdiction. *Id.* at 315. Like the present version of the statute, the prior version of section 52.1(A) also provided that the United States "may acquire and occupy land in Louisiana required for the purposes of the federal government." Acts 1892, No. 12 of 1892, § 2, as amended by Act No. 31 of 1942, § 1. Notwithstanding this statutory language, the Court found that the Louisiana cession statute was insufficient to demonstrate acceptance of federal jurisdiction and that federal jurisdiction was lacking because the federal government had not accepted jurisdiction in a manner required by 40 U.S.C. § 255 (now § 3112). *Adams*, 319 U.S. at 315. Moreover, in *United States ex rel Greer v. Pate*, the Seventh Circuit expressly noted that Louisiana's cession statute did not vest exclusive jurisdiction to the United States in the absence of notice accepting such jurisdiction. *United States ex rel Greer v. Pate*, 393 F.2d 44, 46-47 (7th Cir. 1968); *see also Int'l Bus. Mach. Corp. v. Ott*, 89 So.2d 193, 206 (La. 1955) (reaffirming that section 52.1 did not confer federal jurisdiction pursuant to § 255).

In addition, several courts have found that state cession statutes are insufficient to grant federal jurisdiction pursuant to § 3112(b). *See Johnson*, 994 F.2d at 984 ("[G]eneral ceding statutes

9

[are] insufficient in themselves to transfer legislative authority."). In *Dekalb County, Georgia v. Henry C. Beck Co.*, the Fifth Circuit ruled that the federal government had failed to accept jurisdiction over land ceded to the United States from the State of Georgia. *Dekalb Cnty.*, 382 F.2d at 995-96. Even though the Georgia statutes expressly ceded jurisdiction to the United States like the instant Louisiana statute, the Fifth Circuit found that federal enclave jurisdiction was lacking given that the federal government had taken no affirmative action to accept jurisdiction over the land and had "done no more than take title by deed." *Id.* at 995. The Fifth Circuit further elaborated that "[t]he language 'or in such manner as may be prescribed by the laws of the State' does not relate to the decision of the United States whether it shall or shall not acquire jurisdiction, but to the mode by which acceptance is indicated once the appropriate officer has deemed it desirable to acquire jurisdiction." *Id.*

Similarly, in *State v. Vogt*, the court ruled that there was no federal jurisdiction over a wildlife preserve owned by the federal government because the federal government had not filed a notice of acceptance with the governor, and there was no state law setting forth a procedure for the acceptance of federal jurisdiction. *State v. Vogt*, 776 A.2d 884, 890-91 (N.J. Super. Ct. App. Div. 2001). Although the New Jersey cession statute provided that "[e]xclusive jurisdiction in and over any land so acquired by the United States is hereby ceded to the United States" and that "[s]uch jurisdiction shall not vest until the United States shall have actually acquired ownership of said lands," the court explicitly found that New Jersey's cession statute did not provide a manner for the acceptance of federal jurisdiction, but merely provided for the cession of jurisdiction to the United States for lands acquired in New Jersey. *Id.* at 890. Like in the instant case, the defendant also argued that the United States had accepted jurisdiction by taking affirmative action in granting a

10

license to a federal agency, the Division of Fish, Game and Wildlife, a division in the Department of Environmental Protection. *Id.* The court rejected this argument because it was contrary to the plain language of § 255 (now § 3112), and New Jersey law did not provide for the acceptance of federal jurisdiction by granting licenses. *Id.* Likewise, in *State v. Burell*, the Supreme Court of North Carolina determined that the federal government lacked jurisdiction over lands acquired from the State of North Carolina because the federal government failed to accept jurisdiction pursuant to § 255 (now § 3112), and North Carolina had no laws prescribing the manner of acceptance for federal jurisdiction. *State v. Burell*, 123 S.E.2d 795, 799-801 (N.C. 1962). Even though the North Carolina cession statute ceded exclusive jurisdiction to the United States, the court concluded that "the State of North Carolina [could not] compel the United States to accept such jurisdiction over this area, and [that] it [had] not done so." *Id.* at 801; *see also State v. Johnson*, 130 N.W.2d 106, 107-09 (S.D. 1964) (holding that the South Dakota cession statute, which vested exclusive jurisdiction to the United States, did not confer federal jurisdiction over a national park).

Furthermore, several courts have found that condemnation of state lands is insufficient affirmative action to accept federal jurisdiction. *See Vogt*, 776 A.2d at 891 (ruling that the federal government lacked jurisdiction because it failed to accept jurisdiction despite the fact that the property was taken by condemnation); *Johnson*, 130 N.W.2d at 108 (indicating that land acquired by condemnation is insufficient to demonstrate acceptance of federal jurisdiction); *People v. Sullivan*, 378 P.2d 633, 637 (Colo. 1963) ("[T]he fact that the United States acquires land in Colorado, either by purchase or condemnation, does not *ipso facto* divest Colorado of sovereignty and vest exclusive jurisdiction in the United States, and this is true even though the acquisition be with Colorado's statutory consent and cession of exclusive jurisdiction."); *Burell*, 123 S.E.2d at 801

11

(finding no federal jurisdiction even though the United States acquired ownership by condemnation action).

Nevertheless, some states have prescribed a manner for the acceptance of federal jurisdiction. In *United States v. Johnson*, the Second Circuit found that New York law prescribed a manner for the acceptance of federal jurisdiction in accord with 40 U.S.C. § 3112(b). *Johnson*, 994 F.2d at 985-86. Specifically, the New York statute required the federal government to file maps or plats describing the property acquired with the secretary of state of New York. *Id.* at 985. Because the federal government complied with the New York statute and filed the necessary documents with the state, the Second Circuit ruled that the federal government had accepted federal jurisdiction in a manner prescribed by New York law. *Id.* Additionally, in *Atkinson v. State Tax Commission of Oregon*, Oregon law provided for the acceptance of federal jurisdiction by requiring that the United States file an application with the Governor of the state or the state legislature. *Atkinson v. State Tax Comm'n of Oregon*, 303 U.S. 20, 22 (1938). In *Atkinson*, the Supreme Court determined that there was no federal jurisdiction over land purchased by the United States because the United States had not filed an application to accept jurisdiction as was required by Oregon law. *Atkinson*, 303 U.S. at 23-25.

In the instant case, Defendants have failed to demonstrate that the United States accepted jurisdiction over the Michoud Facility in a manner prescribed by Louisiana law. Contrary to Defendants' argument, section 52.1(A) does not prescribe a manner for the acceptance of federal jurisdiction. In *Adams*, *Pate*, and *Ott*, the courts explicitly found that section 52.1(A) does not provide for the acceptance of federal jurisdiction even though the statute grants exclusive jurisdiction to the United States over lands acquired in Louisiana. Furthermore, like the state statutes

in *Dekalb County*, *Atkinson*, *Vogt*, *Burell*, and *State v. Johnson*, section 52.1(A) is a general ceding statute, which is insufficient to confer federal jurisdiction over the Michoud Facility in the absence of a state laws specifying the means for federal acceptance. Moreover, as noted in *Dekalb County*, the manner prescribed by state law does not relate to the federal government's decision to acquire jurisdiction over the Michoud Facility, but to the mode by which acceptance is indicated. Here, unlike in *United States v. Johnson* and *Atkinson*, but like the state cession statutes in *Vogt* and *Burell*, section 52.1(A) does not indicate a mode of acceptance for federal jurisdiction.

Notwithstanding the statutory language in section 52.1(A), Defendants direct the Court to several cases, including *United States v. Johnson*, *Atlantic Marine Corps Communities v. Onslow County, North Carolina*, and *Koren v. Marietta Services, Inc.,* for the proposition that the federal government may accept jurisdiction by taking affirmative steps. Specifically, Defendants contend that the federal government accepted jurisdiction over the Michoud Facility by initiating expropriation proceedings over the land and transferring the property to NASA, which has used the land since 1962. The Court finds that the cases cited by Defendant are distinguishable from the instant case. As mentioned previously, *United States v. Johnson* differs from the instant case because the New York statute explicitly provided for the acceptance of federal jurisdiction by requiring that the federal government file maps or plats with the secretary of state of New York. *See Johnson*, 994 F.2d at 986. Here, the Louisiana statute does not provide for the filing of expropriation proceedings or the transfer of property to another division of the federal government as a means of federal acceptance. As in *Vogt*, this Court rejects Defendants' contention that affirmative steps, such as a property transfer, are sufficient to demonstrate acceptance of federal jurisdiction because that contention runs contrary to the plain language of § 3112(b), which requires that a state prescribe the

manner of acceptance. Moreover, *Vogt*, *State v. Johnson*, *Sullivan*, and *Burell* all demonstrate that condemnation proceedings are insufficient affirmative action to warrant the acceptance of federal jurisdiction.

Additionally, *Atlantic Marine* is unlike the instant case because the court found that the federal government had sent a letter to the Governor of North Carolina accepting federal jurisdiction, thus complying with the first method of acceptance under § 3112(b). *See Atlantic Marine Corps Cmty. v. Onslow Cnty, North Carolina*, 497 F. Supp. 2d 743, 755 n.10 (E.D.N.C. 2007) ("[T]he court finds as a fact that Secretary Forrestal sent a letter to Governor Broughton accepting jurisdiction over the land at issue."). Finally, in *Koren*, the court found that the United States had accepted jurisdiction over the Roosevelt Roads Naval Base if the land was acquired prior to 1945 because the Secretary of War had sent a letter of formal acceptance. *Koren v. Marietta Servs., Inc.*, F. Supp. 196, 201 (D.P.R. 1998). Even if the land was acquired after the Secretary of War had sent the letter of acceptance, the court concluded that the United States had accepted jurisdiction by complying with Puerto Rico's cession law in taking possession of the land. *Id.* Although the court's reasoning in *Koren* suggests that the federal government may accept land by possession, this Court finds the *Koren* court's rationale unpersuasive in light of the Supreme Court's decision in *Adams*. Even though Louisiana's cession statute provides that the United States may take possession by occupying land acquired in Louisiana, in *Adams*, the Supreme Court found that such statutory language was insufficient to prescribe a mode of federal acceptance. Also, unlike the instant case, in *Koren*, there was evidence that the Secretary of War had sent a formal letter of acceptance. Thus, this Court declines to follow *Koren*.

Because Defendants' arguments are not supported by the plain language of § 3112(b), this Court concludes that the federal government has not accepted jurisdiction over the Michoud Facility pursuant to § 3112(b). As a result, the State of Louisiana has retained jurisdiction over the Michoud Facility. Given that the United States has not accepted jurisdiction pursuant to § 3112(b), Defendants have failed to satisfy the federal enclave jurisdiction test. Therefore, the Court concludes that federal enclave jurisdiction is lacking and that the case must be remanded to state court.

### III. CONCLUSION

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion to Remand** (**Rec. Doc. 9**) filed by Plaintiffs, Thomas Wood and Sharon Wood is **GRANTED**.

This 13th day of May 2011.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE